# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

STEVEN CRAWFORD                                                            PLAINTIFF

V.                          CASE NO. 3:17-CV-00232-JTK

NANCY A. BERRYHILL,
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                  DEFENDANT

## ORDER

**I. Introduction:**

Plaintiff, Steven Crawford, applied for disability benefits on June 18, 2014, alleging a disability onset date of January 28, 2014. (Tr. at 12). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Crawford's application. *Id*. The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Crawford has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Crawford had not engaged in substantial gainful activity since the alleged onset date of January 28, 2014. (Tr. at 14). The ALJ found, at Step Two of the sequential five-step analysis, that Crawford has the following severe impairments: fracture of non-extremity and migraine headaches. *Id*.

At Step Three, the ALJ determined that Crawford's impairments did not meet or equal a

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

listed impairment. (Tr. at 15). Before proceeding to Step Four, the ALJ determined that Crawford had the residual functional capacity ("RFC") to perform the full range of work at the medium level. *Id.*

At Step Four, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Crawford's age, education, work experience and RFC, he could return to past relevant work as a welder. (Tr. at 18). The ALJ made an alternative finding, based upon VE testimony, that Crawford could perform representative occupations of siding installer and window installer. (Tr. at 19). Based on that determination, the ALJ held that Crawford was not disabled. *Id.*

### III. <u>Discussion</u>:

    A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B. Crawford's Arguments on Appeal

Crawford contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the RFC should have included non-exertional limitations because of

2

Crawford's headaches. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Crawford was assaulted on January 29, 2014, and as a result, suffered multiple fractures in his face. (Tr. at 331-338, 355, 370-372). He complained of headache and face pain. (Tr. at 331). He underwent surgery to repair the fractures. (Tr. at 370). Crawford was prescribed pain medication and Topamax (Imitrex) for headaches. (Tr. at 370-379). On June 6, 2014, Crawford told Sarah Hitt, Nurse Practitioner, that the Imitrex was not working. (Tr. at 376-377).

Ms. Hitt filled out a medical source statement on July 17, 2014, having only seen Crawford twice. (Tr. at 412). She said that he suffered daily, constant headaches lasting 3-4 hours. *Id.* While she checked the box saying that his headaches did not interfere with his ability to work, she then wrote that he would only be able to work half the day, 2-3 days a week. *Id.* Ms. Hitt did not cite to any objective testing or clinical notes, and her opinion on the ability to work was inconsistent. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005)("physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.") Moreover, checkbox medical source statements are not entitled to great weight, and Ms. Hitt was not an acceptable medical source. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012); 20 C.F.R. §§ 404. 1527(e), 416.927(e); SSR 96-5p). The ALJ properly afforded Ms. Hitt's statement some weight, but not controlling weight. He relied in part upon her statement, but paired it with the opinions of the state-agency doctors, who opined that Crawford could do medium work. (Tr. at 70, 82). The ALJ properly evaluated the opinion evidence.

On September 2, 2014, Crawford presented to Ms. Hitt with face pain and headache, because he had fallen and hit a pole. (Tr. at 419-420). A facial x-ray was normal. (Tr. at 455). Ms.

3

Hitt continued Crawford on Topamax. *Id*. On December 13, 2104, Crawford presented to the ER for a migraine that had lasted two days. He reported nausea and vomiting, with pain worsened by light and noise. (Tr. at 430-434). He was given a Toradol injection. *Id*.

At this point in Crawford's medical history, it appeared that headaches may effect his ability to engage in full-time work. However, from January 2015 through November 2015, Crawford had eleven appointments with C. Mack Shotts, M.D., with records showing that his pain and headaches had stabilized. He was "stable with no report of complications" on January 9, 2015. (Tr. at 457). His symptoms were "managed with pain management" on February 9, 2015. (Tr. at 472). He was "doing well" with pain "under control with present treatment" on March 9, 2015. (Tr. at 470). He reported he was "doing well with no new concerns" on April 13, 2015, and symptoms were controlled by pain medication. (Tr. at 467). On May 13, 2015, Crawford was stable and his pain was controlled by treatment. (Tr. at 464). On June 12, 2015, and July 13, 2015, Crawford was "doing well." (Tr. at 482, 485). On August 13, 2105, he complained of moderate to severe pain, but Dr. Shotts noted he was stable and could return to the clinic in one month. (Tr. at 480). In September, October, and November 2015, Crawford presented as stable with good pain control. (Tr. at 490-497). At all of these 2015 visits, neurological examinations were normal. (Tr. at 457-497).

Although in early 2014 Crawford complained that medications were not helping, for over a year after that, his pain decreased with treatment, according to Dr. Shotts. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). And at the hearing, Crawford said that Topamax mitigated the onset of headaches, although it did not make them go away altogether. (Tr. at 38-

4

39). He also said that he had been weaned off of Hydrocodone for pain. (Tr. at 40). Furthermore, as of the time of the hearing, Crawford had not seen a migraine specialist, pain management specialist, or neurologist for his headaches. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Finally, Crawford said he could perform many activities of daily living, including mowing the lawn, cleaning house, doing laundry, fixing meals, driving, and playing the guitar. (Tr. at 260-267). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Crawford argues that the ALJ should have included some non-exertional limitations in the RFC. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Crawford contends that because headaches were ruled a severe impairment by the ALJ, he should have included headache-related limitations in the RFC. A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). The positive response to medication, stabilization of condition, and conservative nature of treatment in this case rule out a disabling functional loss. Dr. Shotts noted in almost every month of 2015 that Crawford was doing well with treatment, so Crawford's allegation of non-exertional limitations falls short. The ALJ did not err in establishing the RFC.

## IV. **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC properly incorporated all of Crawford's limitations. The finding that Crawford was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 29th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE